The first case on the call this morning is agenda number 124352, People of the State of Illinois v. Ryan v. Roddis. Now counsel for the appellant, Mr. Chabala, please step forward. Mr. Chabala Good morning. May it please the court, counsel, I'm Assistant Attorney General Michael Chabala on behalf of the People of the State of Illinois. The appellate court's judgment should be reversed for two reasons. First, the appellate court's ruling that during a preliminary Krankel inquiry, a trial court may not consider the merits of the defendant's claim is contrary to this court's longstanding precedent and will lead to bad results. Second, as applied to this case, the trial court correctly denied the defendant's Krankel motion and declined to appoint new counsel for two reasons. One, it plainly relates to an issue of legal strategy, which is something that cannot be raised in Krankel proceedings. And second, the claim independently is also plainly meritless. On the first issue, your honors, this court has been very clear about what trial courts should and should not do at the preliminary inquiry. This court has repeatedly instructed trial courts that they should not automatically appoint new counsel whenever a defendant raises a Krankel claim. What this court has instructed trial courts to do consistently is to conduct an inquiry into the claim. And as this court has explained, that inquiry can include talking to the defendant about his claim, talking to defense counsel, reviewing the record. And this court has also said that the judge can make his or her decision based on his or her knowledge of the case and knowledge of the way counsel performed the trial. So, of course, the point of this inquiry is to consider the merits of the defendant's claim. And as we cite in our brief, in 20 different cases, this court has said that trial courts should deny Krankel claims and decline to appoint counsel if they lack merit. And this is not just an issue of dicta, as we cite cases like Chapman, Crane, and Coleman. This court has affirmed trial court decisions not to appoint counsel because the claim lacked merit. Either it lacked merit because the error the defendant was complaining about was not really an error, or because that error did not have an effect on the outcome of the trial. And that's a good rule. We want trial courts to be able to decline to appoint new counsel if the claim lacks merit. I think we all understand that when a defendant is convicted, it's extremely common for that defendant to immediately turn around and try to pin the blame on his attorney. I wouldn't have been convicted if my attorney did something different. I think we also all know and understand that a great many of those claims, one might even argue most of those claims, lack merit. And so this court was right to give trial courts the authority to deny those claims without incurring the time and expense that would necessarily be incurred if they had to appoint counsel. Defendant has attempted to salvage the appellate court's opinion by saying that what the appellate court really meant is that trial courts can consider the factual merit but shouldn't consider the legal merit. That's not really what the appellate court says. There's nothing he can cite for that. But even if we assume that's what the appellate court meant, the decision still needs to be overturned because it's inconsistent with this court's authority. Again, Chapman, Crane, and Coleman, in all of those cases, the trial court made a decision on the legal merits of the claim and declined to appoint counsel. In all three of those cases, this court affirmed that decision. And again, that makes sense. A claim that lacks legal merit is often the easiest kind of claim to see lacks merit. If a defendant is raising a claim that's contrary to law or inconsistent with the law, we would want the court to deny those at the first instance. I should briefly mention the appellate court. Although the appellate court said that trial courts should not deny claims on the merits, it talks about four different categories. I won't belabor this point, but we talk about it in our briefs. There's four different categories of claims that the appellate court says can be denied. They're really confusing. They're inconsistent in a lot of ways, inconsistent with each other, inconsistent with the rest of the opinion, inconsistent with this court's authority. But the bigger point, I think, that needs to be made on the four categories is that this court has never been that restrictive, that there's only four kinds of claims that can be denied at the preliminary inquiry stage. This court has said a claim lacks merit, should be denied without appointing counsel. And this court has trusted trial courts to be able to discern between those claims that lack merit and those claims that might potentially have merit if counsel is appointed to pursue them. And I think the case law bears out that this court was right to put that trust in trial courts. Crankles existed for almost 40 years at this point. And this rule about being able to consider the merits has existed basically that entire time. And neither defendant nor the appellate court has been able to cite any cases where trial courts held defendants to some kind of unreasonable standard. Mr. Spoolidge, is the confusion regarding the, I guess, brief appointment, I think the trial judge said to help him get organized, does that bear at all in the decision here? No, Your Honor. And that leads me to the second issue of how the appellate, excuse me, the trial court applied here. On the issue of the brief appointment, I think it's important to point, there's two contexts I think are important. There's the context of arguments that have been made on appeal and there's the procedural context of that brief appointment. This is not a case where a defendant has been, you know, jumping up and down, pounding on the table saying, wait a minute, I was appointed counsel. Why did we even have to go through this preliminary crank appointment? He did not raise this argument in his briefing in the appellate court. This is something the appellate court kind of tucked in at the end of its opinion, which basically makes the rest of its opinion advisory. But even here before this court, the defendant is not, again, pounding the table saying, I was appointed counsel. We didn't even have to go through this process. It's just he kind of has a half-hearted argument of, well, the appellate court sort of got it right. Putting it in the context of this case, what the trial court actually did, we have to remember that the defendant was convicted in the fall of 2013. At that point, he filed a pro se motion for reduction of sentence. The record is slightly unclear about this, but apparently he was on lockdown, so there was a delay in getting that pro se motion on file with the court. When the court finally got it, he said, this is untimely. I'm dismissing it. The case went up on its initial appeal. The defendant's primary argument was sufficiency. He loses on sufficiency, but everyone agreed. There's this pro se motion for reduction of sentence that included, tucked away in there, this claim of ineffective assistance. It was remanded in 2016, so three years after the initial trial. The judge tells, at the first hearing on remand, the judge tells the defendant, I'm not really, I wasn't expecting this to come back. I'm not sure what's going on. I'm not sure that you're entitled to counsel at this point, but to help me get organized, I'm going to appoint counsel. There was never any discussion of, you're entitled to counsel because of the prank call or anything like that. It's to help me get organized. There was a counsel briefly appointed for a period of about two months. During that two-month period, there were three hearings. The first hearing, nothing really happened, just the appointed counsel showed up. The second hearing, apparently the appointed counsel had some kind of conflict, so he was not there. At the third hearing, the judge apologized to the parties and said, I'm sorry that I'm late. I was spending some time reviewing the case file, getting up to speed on what's going on. I now see this is set for a preliminary crankle inquiry, meaning that you're not entitled to counsel at this point. He spoke to appointed counsel and said, do you agree with that? Appointed counsel said, yes, this is remanded for a preliminary crankle inquiry. The question of the preliminary crankle inquiry is whether or not he's entitled to counsel. He's not entitled to counsel at this point. Appointed counsel pointed out, by the way, anyway, I think I have a conflict of interest, so I probably can't represent this guy anyway. I think putting this all in context, this is not something that the defendant has ever really pressed as an argument. I think the reason why is because there was some initial confusion, understandably, on the trial court's part of why this was remanded. Once that was cleared up, the trial court made the correct decision that this is remanded for a preliminary crankle inquiry. Appointed counsel agreed with that and they went forward. The court ultimately denied, obviously, his crankle motion. That was a correct decision for two reasons. One, everyone agrees that the claim here relates to a matter of legal strategy. The issue is he's arguing that his lawyer should have introduced into evidence hard copies of text messages that the victim sent to the defendant after the domestic violence. Just to be clear, defense counsel asked the victim and the defendant about these text messages. He just didn't introduce them with evidence. Obviously, that's a matter of trial strategy, and obviously, as the court has said many, many times, you cannot challenge trial strategy with crankle. It's an automatic denial. Separately and independently, if we set that aside, his claim clearly lacks merit. This court in the United States Supreme Court has said in the context of Strickland, it's basically impossible to have a meritorious claim that relates to legal strategy. We don't want to judge counsel's decisions in hindsight. In the context of introducing evidence or cross-examining witnesses, which would be the Strickland issue in this case, this court has recognized one exception, and that's the exception of if the defense counsel can be said to have entirely failed to provide any testing of the state's case. The defendant has never argued that his counsel failed to test the case. He couldn't make that argument on this record. I won't go through this all with you now, Your Honors, but we laid out in our brief, this defense lawyer aggressively cross-examined every single witness in this case. He got the victim to admit that she had provided some inaccurate information to the responding police officer. She apparently told the police officer he had hit her many times, but apparently this was the first time or the only time. He got her to admit that she had a pending charge in another case for filing a false police report. He got her to admit that she had sent some text messages to him saying she knew this was a or she believed this was an unintentional cause of her injury. He called the defendant to testify to his version of events, got him to testify about these text messages. So clearly this counsel did test the state's case. Ultimately he lost for very understandable reasons because the evidence strongly shows that he was guilty. When he had his preliminary crankware in, his trial counsel provided legitimate reasons of why he did not think he needed to use these text messages, and the court quite rightly denied his crankware. So unless there are any questions, we again say that this Court's longstanding rule that courts should consider the merits should be reaffirmed. And here clearly the trial court had multiple correct reasons for denying his crankware claim. So we would ask this Court to reverse the appellate court's judgment. Thank you. Mr. Wilson? May it please the Court, counsel, Good morning, Your Honors. My name is Ryan Wilson and I represent Ryan Roddice on behalf of the Office of the State Appellate Defender. Ryan Roddice did exactly what he was supposed to do during a preliminary crankle inquiry. He articulated the theory of why he was denied the effective assistance of counsel. He asserted that his attorney failed to cross-examine the complainant in this case with text messages that would have undermined her credibility in a case where credibility was of paramount importance. The circuit court reviewed this claim, and rather than finding that Ryan couldn't demonstrate possible neglect, the court applied the final merits standard of the Strickland analysis. It found that it explicitly found that his claims did not amount to ineffective assistance of counsel. That was, I believe, the third time during that hearing that the court said that that was the standard that it was going to hold Ryan to. The State apparently seizes on this lax merit language that various courts have cited to say that what this court and other courts mean by lack of merit is that a circuit court can review a pro se defendant's complaints about his attorney, and even though during the first stage of the crankle process the defendant is required to show possible neglect, a court can jump over that step and rule that the defendant could never prove a case of ineffective assistance of counsel, and that's not the proper standard that this court and other courts have used. If this court looks, for example, at People v. Ayers, which it decided not that long ago, this court said that the purpose of the preliminary inquiry is to ascertain the underlying factual basis for the defendant's claim and afford him an opportunity to explain that claim. In this way, the court will have the knowledge that it needs to have to know whether to appoint counsel for the defendant. An attorney who then can raise the legal arguments can shape these claims, these factually based claims that the defendant has made, and can advocate for the defendant during an evidentiary hearing where counsel can be called, there can be an examination, and we can figure out whether indeed there was a case of ineffective assistance of counsel here. Essentially, the circuit court in this case short-circuited that process. It applied the Strickland standard when possible neglect was all that Ryan was required to show. When you're looking at what this lacks merit language means, you can look at various cases, Johnson, Moore, Towns, and they talk about a defendant presenting the factual basis of his claims, and then the court considers those claims to determine if they lack merit or pertain solely to matters of trial strategy. The Fourth District Appellate Court looked at the Crankle cases that had been decided and believed that there was some confusion about the proper standards to use and the way to properly conduct a Crankle inquiry. And so in looking at cases, again, like Johnson, Moore, and Towns, the court came up with a summary of cases where this court and others have said that a claim that lacks merit is a claim that's conclusory, legally immaterial, misleading, or solely a matter of trial strategy. And that really makes sense, because at a preliminary Crankle inquiry, you have a pro se defendant who's understood in the law, Mr. Rod has had a 10th grade formal education, coming to the court, and in plain language explaining why he believed that he was denied the effective assistance of counsel. You kind of have to have a happy medium, though. You can't appoint counsel in every single case for a defendant. That being said, there will be cases where a defendant just is unable to properly enunciate what his legal claims are. So these four standards really make a lot of sense. It allows the court to look at a claim. In People v. Towns, for example, the court looked at the defendant's claims and said, well, some of these claims are conclusory, and if they're conclusory, they lack merit. Again, going back to that standard that we're talking about here of determining whether a claim lacks merit. The state in its brief and in argument today has relied on several cases, Crane and Coleman and Chapman, it's mentioned several times. Crane and Coleman looked at the issues as substantive issues that the defendant raised, also as ineffective assistance of counsel issues. The court analyzed the substantive aspect of those issues earlier in the opinion and then kind of said, well, the defendant raises these as ineffective assistance of counsel. We've already addressed these. Therefore, there's no merit to these claims. But Chapman is really interesting to the analysis of the question that we're here for today. In Chapman, the court did, this court did exactly what it was supposed to do. It looked at each of the defendant's allegations to determine if they were properly denied by the circuit court. And I've got the Chapman decision here. What this court said was, here defendant presented the trial court with a motion containing conclusory allegations of ineffective assistance of counsel, conclusory allegations that couldn't establish that there was merit. The court said, as to another argument regarding the calling of a witness, whether to call certain witnesses is a matter of trial strategy usually reserved to the discretion of the attorney. It found that it was solely a matter of trial strategy. Then Coleman does something really, really interesting. Coleman finishes this section of its analysis by saying, defendant's allegations did not show possible neglect of his case. That is the standard that we're supposed to be examining a pro se claim of ineffective assistance through. Not the final legal merit. Again, as this court said in Ayers, the purpose of this preliminary inquiry is so the court can determine whether to appoint counsel. Is this court, Ms. Wilson, ever distinguished between factual and legal merit? I don't believe that this court has. We've just said the inquiry is if they are meritless. Correct, correct. If there's merit to the argument. I think it follows, though, that it would almost have to be a discussion of factual merit when we're in the posture that we're in right now. Because when Ryan Rodas presents his claims to the court, he isn't presenting legal arguments yet. That's why an attorney is appointed to represent him. He's presenting his factual arguments. And so the court can look at it again. The standards are kind of a happy medium here. The court can look at it and the court can say, well, you know what, Mr. Rodas? For example, the state uses an example in their brief. An example of a defendant is charged with statutory rape, and his defense is that the victim dressed provocatively. The state says that would be a claim that then counsel would have to be appointed for. No, it wouldn't. That is a legally immaterial claim. There is nothing that any attorney could do to salvage a claim or make that claim on behalf of the defendant. That is the sort of analysis that courts should go through during the preliminary inquiry stage. But again, it's an analysis that the court did not go through here. And that, I think, is what the appellate court's largest problem is with this case, is that the circuit court ruled clearly that Ryan could not establish the elements of ineffective assistance of counsel, and that was not the standard here. So not only does this case need to be remanded because the circuit court used the wrong standard at issue in this case, but it also needs to be remanded because Ryan did plead a claim of possible neglect. Again, Ryan alleged that his attorney failed to introduce and cross-examine the complainant in this case with several text messages. Now, the state says that counsel did cross-examine the victim or mention these at trial, and I disagree with that. There are several text messages that were never mentioned here. In fact, in the brief, the state's briefs, they talk about a text message where ---- I want to understand something. Yes. The appellate court in this case held that the trial courts may deny critical motions at the initial inquiry stage only if defendants claim, as you already mentioned, conclusory, misleading, legally immaterial, or pertaining solely to an issue at trial stage. I'm not sure that they made it exclusive to those four, but those were the four that they talked about in that position. All right. So they named those four. Correct. You heard opposing counsel talk about the text messages and the failure to show those text messages as being a matter of trial strategy. Yes. So when is, under the appellate court analysis, would you agree that that arguably is a matter of trial strategy? How does the trial judge separate the facts from the law there? Right. He claims something, the trial judge says, that's trial strategy. But your position would be still, and that's one of the four factors given by the appellate court, still that he could not deny appointing counsel in that circumstance. Right. I think that's a great question. Where it comes down in this case, and may I use this case as an example to answer that question? So in this case, when Ryan posed this issue of his attorney not using the text messages, the court engaged in an exchange with counsel. And counsel initially said, I don't think I need, I didn't think I needed to admit those because the complainant in this case admitted that the cut that she sustained was an accident. Ryan then presented the court with a letter that defense counsel had sent to the Attorney Registration and Disciplinary Commission. And in that letter, counsel, Ryan had complained about, apparently complained about counsel not using the text messages. In that letter, counsel said, I thoroughly cross-examined the complainant in this case, including with the text messages and e-mails. And that wasn't really accurate here. When there is a factual question of whether counsel acted appropriately in a case such as this, there's a question of, okay, was it a matter of trial strategy because you thought you didn't have to introduce it as a result of her admission that she thought the cut was an accident? Or was it that you did cross-examine her with it like you told DA or BC you did? Additionally, we have this issue of whether trial strategy gives counsel a blanket immunity from any challenge to ineffective systems of counsel. And contrary to the state's position, I would argue, no, it doesn't. The appellate court addressed this very question and said that trial strategy is not above reproach. Additionally, there are several cases, People v. Jimenez, I believe it is, said that when, in that case, it was a, the defendant had made a claim that his attorney didn't call an impeaching witness. And the court said, when you're faced with a claim like that, you have to put the impeaching testimony in context. You have to examine it. It wasn't enough for the court in that case just, or for the defense counsel in that case to say, oh, no, it was trial strategy, that's why I did that. The court said you have to actually examine what impact that impeaching testimony may have had here. Another case, the Mayer case that is cited in the state's brief, acknowledges that there are cases where, where trial strategy is afforded great deference unless that strategy is unreasonable. Where do we, isn't there a danger then that we get into second guessing what trial attorneys are doing? There can be a danger in doing that. I think the line is drawn, and that's why it's so important to have a proper crankle inquiry. Had this inquiry been proper, had defense counsel, or I'm sorry, had the court analyzed Ryan's claim to determine if it demonstrated possible neglect, had it used the correct standard, which it didn't do, but had it done that, I think it would have been appropriate for Ryan to have been appointed counsel in this case. At that point, trial counsel can be sworn and testified. Defense counsel can call other witnesses. And we have a record of exactly why trial counsel did what trial counsel did do, and whether it was trial strategy or not. At that point, it's not second guessing them. We have a record of that. And if I can step back just for a moment, because there's a very important point I forgot to mention. This is not like a lot of ineffective assistance of counsel cases that this court sees. This is not a case where the defendant on direct appeal or following the dismissal of a petition for postconviction relief has alleged that his attorney was ineffective. In those cases, this court has to look at the petition, look at what the circuit court did, review the trial record, and determine whether, indeed, there is a showing of ineffective assistance of counsel. This case is different, because we actually have a record here. We have what occurred during the Krankel proceedings. We have a transcript of counsel. Counsel never said, Your Honor, it was trial strategy. That's why I didn't do this. The judge never said, I'm finding that your claim doesn't have merit because it's a matter of trial strategy. Instead, what the court did was, or what the court said was, I'm finding that you can't establish ineffective assistance of counsel. This could have been very different had the court engaged in the sort of analysis that it was supposed to engage in. Had it gone through the text messages? Had it analyzed this case through determining whether there was ineffective assistance of counsel or not? You know, where I'm having a little trouble here is, does this mean that in every case if a defendant's convicted and he doesn't like that, doesn't probably think what his lawyer did enough to get him the result he wanted, and we're going to have a second proceeding in which the lawyer's on trial for making, in a Krankel proceeding, for making, and has to justify every decision he made? Isn't that why we put things into a trial strategy and say, we're not going to put that burden on defense counsel? Help me separate that out. Well, the burden doesn't get to defense counsel unless the claim survives the initial stages of the Krankel. But you're saying it, but you're saying he alleges facts. He didn't, in this case, for example. Correct. He didn't impeach with all the text messages. Correct. That's enough, then. In this case, because of the facts of this case, it is. What occurred in this case, the court on several occasions, this was a bench trial, the court on several occasions explained that its determination of what happened in this case came down to credibility. Megan, the complainant in this case, testified that Ryan grabbed her head, pushed her head, and her head happened to hit the corner of a door, and she sustained a laceration. Ryan, on the other hand, claimed that he was having a fight with the complainant who he lived with, and he picked up a big couch cushion from a sectional, and he tried to throw it out the front door because she was throwing his other possessions out the front door, and that couch cushion hit her head, caused it to go back and hit the door. So we have a question of whose story is correct here. If it's Ryan's, it's completely accidental. There's no battery involved here, and therefore, he's not guilty of the offense. If it's Megan's, then, yeah, he grabbed her and pushed her head into the store. Megan's credibility at the time of trial was already on the ropes here. When police arrived at the home, she told the police that Ryan struck her multiple times. She then testified at trial that that wasn't accurate, that that never happened. She also admitted at trial that she was being charged with filing a false report. So credibility, again, was of extraordinary importance in this case. Defense counsel then had these text messages, text messages that talk about how Megan would go to his attorney if Ryan paid her $1,000, how she wants him to help her because she helps him to the fullest, that she may have slipped up, but she still had Ryan's back. We don't know what she means by slipped up. Is it that this never really happened and she lied to the police when she said that Ryan pushed her head? She also said that she said it to get what I wanted, to get money, and she had been playing him for the whole time. He was too dumb to see it when she didn't go to his lawyer. These are all facts that go directly to her credibility, facts that had they been admitted at trial may have changed the outcome of this case. And just before my time concludes, I also want to note the state in its reply brief says that the court made a finding during the Krenkel proceedings that the text messages would not be sufficient to sway the court's decision that the defendant was guilty. I went through and looked at that transcript, and the court didn't say anything about the text messages when he was concluding the Krenkel inquiry. Instead, what he said was that the allegations regarding the accident were not sufficient to sway its decision. Now, I don't know what the court meant or what the court meant by the allegations regarding the accident weren't sufficient to sway its decision, but certainly the text messages may have done that. In the case of credibility, where it's a question of who was telling the truth, counsel has an obligation to use the evidence at his disposal to cross-examine and impeach witnesses, and that was not done here. On the issue of trial strategy, would the trial court have been justified in asking or hearing about, I think defense counsel said part of his strategy was he didn't want other text messages to come in, so he simply cross-examined. Can the trial judge look at that in a pre-Krenkel hearing? So the trial counsel never made that argument. That's an argument that the state has made, that had trial counsel admitted the text messages, the state may then have offered the text messages. There's two problems with that argument. The first is, again, we have a record of what occurred during the Krenkel inquiry. Defense counsel never said, yeah, I didn't introduce the text messages because I was concerned that had I done that, the state might introduce these other text messages and that would date my client with that. He never said that. That is a speculative allegation on the state's part. I see my time has expired. May I finish? Thank you. The other ‑‑ sorry, I lost my train of thought. Just wind up. Okay. I'm sorry. So for those reasons, we'd ask that the appellate court's judgment is affirmed and that Ryan's case be remanded for new Krenkel proceedings. Thank you, Your Honor. Thank you. All right. Mr. Shugula. Thank you, Your Honor. Thank you, Your Honor. Counsel, if I understand his argument correctly, is mostly relying, at least in cases from this court, on errors and more. Those cases were about what's necessary to trigger a Krenkel inquiry. They have nothing to do about what can be considered at the preliminary Krenkel inquiry. They both do say that the claim should be denied if it lacks merit. They certainly don't distinguish between factual and legal merit like the defendant is asking this court to do. Chapman is a decision from this court several years ago, based on all fours with this decision. In this case, excuse me, in that case the defendant, similar to this case, faulted his attorney for not introducing certain documents at trial. The trial court denied the claim, saying it lacked merit, the documents would not have changed the outcome of the trial. It said that the defendant provided constitutionally effective representation under Strickland. This court explained that, quote, the record shows that the omitted documents would not have had any bearing on the case. This claim simply lacks merit. The court went on to mention multiple times in Chapman that the claim lacked merit. The documents would not affect the outcome of the case. Plainly, this court has made clear that these kind of decisions the trial court made here are perfectly acceptable under Krenkel. So his argument is squarely contrary to this court's precedent. Defendant, when he was pressed a little bit to explain what can be denied, he talked about a claim that is legally immaterial, which of course is something that, if that were to be the new standard, would be something that would be difficult, I think, for the lower courts to grapple with what that means and how that's different from what Krenkel's been for a while. But when he attempted to explain what legally immaterial would be, he said, if I wrote down this quote correctly, that if the court looked at the allegations and said there's nothing defense counsel could do to make this a winning claim, that's exactly what the trial court did in this case. The trial court knew exactly what the claim was, that defense counsel did not introduce these text messages into evidence hard copies. I should note as an aside, any suggestion that defense counsel did not cross-examine the witnesses about these text messages is completely wrong. We've cited in that brief, the victim and the defendant were both asked about these text messages. However, at the preliminary Krenkel inquiry, they were presented to the trial court, and the trial court plainly was making clear that no lawyer could make this into a meritorious claim. And that's understandable. Defense counsel, the argument just heard talked about this as a claim about credibility. But the judge explained what the determining factor in credibility was. The trial judge noted that the victim had a very severe head injury, and that was the determining factor. The defendant's version of events is that he happened to throw a pillow off the door, and it coincidentally hit his girlfriend in the head and coincidentally drove her head into the door, causing this very severe injury. The girlfriend's testimony was that, no, he grabbed me in a fight and shoved my head and hit it against the door. The judge said, based on the severity of the injury, of course the girlfriend's testimony is more credible. You don't get this kind of severe injury based on throwing a pillow out the door. So the trial judge was doing exactly what defense counsel just argued should have happened in this case. He looked at it and said, nothing about these text messages changes anything. Nothing changes the severity of the injury. The defendant just argued that there shouldn't be blanket immunity for legal strategy. Certainly in the Strickland context, there's not just blanket immunity. You can't just say this was a legal decision and, therefore, there's no possible merit to this under Strickland. Again, you would have to go into whether counsel provided adversarial testing. But in the Crankville context, it basically is blanket immunity. And that's what this Court has specifically held in Banks and Chapman. Those cases are directly on point. In both of those cases, the defendant was complaining about the failure to introduce some testimony. This Court just flatly said, citing the call witness's legal strategy, that ends the matter. So we don't get into any kind of determination about whether or not it was a correct decision or not. Defense counsel also said that during the preliminary inquiry, there was no discussion of whether this was legal strategy. I do think it's fair to say that the trial lawyer never specifically used the words legal strategy. But he clearly explained that this was legal strategy. He explained, I questioned her during cross-examination about these text messages. She admitted what was in the substance of the text messages. Therefore, I didn't see any point to introducing hard copies of the text messages themselves. So while he didn't use the phrase legal strategy, he was clearly explaining this was legal strategy. And while the judge didn't use the phrase legal strategy either, that's really irrelevant for purposes of appeal. This Court cannot affirm on any grounds other than apparent from the record. No one disputes, I think, that this was legal strategy, and therefore it was proper to deny it. So unless there are any questions, we would ask this Court to reverse the case. Thank you. Case number 124352, People of the State of Illinois v. Ryan Rodas, will be taken under advisement as agenda number 5. Counsels, thank you very much, Mr. Wilson and Mr. Shibula, for your arguments today.